CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

FEB 2 5 2011

JULIA C. DUDLEY, CLERK
BY: /s/ Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| JACQUELINE D. GOODE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:09cv00045 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATIONS

Plaintiff Jacqueline D. Goode ("Goode") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income benefits under the Social Security Act (the "Act"). On appeal, Goode contends that the Administrative Law Judge ("ALJ") erred by failing to give appropriate weight to her treating oncologist, Dr. Headley, and to the state agency consultative physician, Dr. Young. Goode also claims the ALJ failed to adequately address her complaints of pain. At the summary judgment hearing held on September 3, 2010, Goode raised a third argument that this case should be remanded for reconsideration of the disability onset date in light of the fact that the Commissioner found Goode disabled and awarded her benefits on a subsequent application. The undersigned gave the parties twenty (20) days to file supplemental briefs on that issue.

Having reviewed the administrative record and the materials filed by counsel, the undersigned concludes that the ALJ failed to give appropriate consideration to the opinion of Goode's treating oncologist, Dr. Headley, whose determination that Goode's physical

impairments preclude her from all work is supported by treating physician Dr. Kim Wright, state agency consultative examiner Dr. Erika Young, and other evidence of record. Additionally, there may be an inconsistency between the denial of disability benefits in this case and the grant of benefits in a subsequent application based on the same alleged physical limitations only one day after the ALJ's unfavorable decision. As such, it is **RECOMMENDED** that this case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), that plaintiff's motion for summary judgment (Docket #13) be **GRANTED**, and that the Commissioner's motion for summary judgment (Docket #14) and supplemental motion for summary judgment (Docket #22) be **DENIED**.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions.

See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education,

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

3

work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Goode was born in 1967, (Administrative Record, hereinafter "R." 23, 38), and at the time of the ALJ's decision was considered a "younger individual" under the Act. 20 C.F.R. §§ 404.1563(b), 416.963(b). Goode has a high school education, and prior to the alleged onset date, she worked at a group home for children for five years. (R. 23, 39.) She left this job after being diagnosed with breast cancer. (R. 41.) Goode previously worked as an assembly line worker, a housekeeper, and as a presser/pinner in a clothing factory. (R. 40, 147.)

Goode alleges a disability onset date of August 1, 2005, due to breast cancer, side effects from medication, and high blood pressure. (R. 14, 136.) Goode's application for benefits was rejected by the Commissioner initially based on a medical records reviews by Carolina Longa, M.D., on July 25, 2006 (physical), and David Leen, Ph.D., on August 30, 2006 (mental). (R. 432-38, 454-57.) This decision was confirmed on reconsideration based on medical records reviews by Dr. Richard Surrusco on February 20, 2007 (physical), and Joseph Leizer, Ph.D., on February 20, 2007 (mental). (R. 508-24, 526-32.) An administrative hearing was convened before ALJ Brian Kilbane on March 5, 2008, at which Goode was represented by counsel. (R. 35-59.)

---

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

ALJ Kilbane found that Goode has medically determinable impairments, including status post left mastectomy secondary to breast cancer, status post chemotherapy and radiation treatment with residuals of motor sensory polyneuropathy, and depression, that qualify as severe impairments pursuant to 20 C.F.R. §§ 404.1520(c), 416.920(c). (R. 14.) The ALJ also found that Goode has the RFC to perform sedentary work, except that she can lift up to 20 pounds occasionally, but held that she cannot perform continuous pushing and pulling with her lower extremities or perform more than occasional balancing, stooping, kneeling, crouching, crawling or climbing of ramps. (R. 16.) The ALJ further found that Goode cannot climb stairs, ladders, ropes or scaffolds, is limited in reaching in all directions, and should avoid work around heights and hazards. (R. 16.) Finding there are a significant number of jobs in the national economy that she can perform, ALJ Kilbane held that Goode is not disabled under the Act. (R. 23-24.) The Appeals Council denied Goode's request for review and this appeal followed. (R. 1-3.)

Goode filed a subsequent application for benefits, alleging a disability onset date of March 29, 2008, the day after ALJ Kilbane's decision. An administrative hearing was held before a different ALJ, Gordon Malick, on February 9, 2010, at which Goode was represented by counsel. In a fully favorable decision dated June 22, 2010, ALJ Malick determined Goode has the RFC to perform less than a full range of sedentary work and therefore is disabled under the Act. (See Exhibits to Pl.'s Suppl. Br.)

### III

In her summary judgment brief, Goode argues that the ALJ erred by failing to appropriately consider her complaints of pain and by failing to give adequate weight to the opinion of her treating oncologist, Dr. Robert Headley. A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...."); Social Security Ruling ("SSR") 96-2p.

## A.

Robert Headley, M.D. began treating Goode on July 29, 2005 for what he described as "rapidly progressive high risk breast cancer." (R. 283.) She underwent a left simple mastectomy and left axillary sentinel lymph node biopsy times five in August, 2005, and thereafter began chemotherapy and radiation treatment, followed by Tamoxifen therapy. By all accounts, she initially tolerated treatment well, aside from some complaints of achiness and a significant skin reaction she developed to the radiation therapy, which later resolved.

In December, 2005, she began to complain to Dr. Headley of mild tingling of her fingertips and itching in her hands and feet. (R. 320.) By February, 2006, the complaints had progressed to peripheral neuropathy in her fingers and feet. (R. 317.) While the neuropathy in her fingers did not affect her daily activities at the time, her feet were noted to be "significantly affected and she has burning pain and numbness in the entirety of her foot. She says that when she takes a shower it hurts for the water to hit her feet. She is also having trouble feeling the

pedals on the car when she attempts to drive." (R. 317-18.) She continued to complain of neuropathy in March, and described it as a "burning, tingling sensation which is aggravated by walking." (R. 212.) Dr. Headley's notes from May 5, 2006 reveal Goode "seems to be really bothered by the neuropathy in her feet and to a lesser extent her hands. She is disappointed that she is not able to work now." Dr. Headley noted he filled out paperwork extending her disability until November 1st. (R. 422.) Goode previously had been cleared for temporary disability by surgeon John Guglielmetti, M.D., from November, 2005 through May, 2006. (R. 248.)

Goode was examined by state agency consultative physician, Erika Young, D.O., on July 15, 2006. Dr. Young noted Goode's station and gait were within normal limits, as were her range of motion and muscle strength. (R. 429.) Sensory examination revealed decreased pinprick and vibration in the upper and lower extremities bilaterally, and bilateral reflexes were 2/4. (R. 429.) Dr. Young diagnosed Goode with "[s]evere pain secondary to tamoxifen/chemotherapy. Pain in all joints in the upper and lower extremities bilaterally," as well as severe depression. (R. 429.) Dr. Young opined that Goode "may perform light duty approximately six hours throughout the day, however, due to the fact that the patient has a lot of pain most of the time, is very doubtful." (R. 429.)

Goode continued to complain of pain and limitations to Dr. Headley in August. (R. 440.) Dr. Headley noted in September that Goode's neuropathy had worsened over the past year. (R. 419.) She was referred to Dr. Joseph for nerve conduction studies, which revealed decreased sensitivity to the knees bilaterally, diminished vibratory sensation at the knees and ankles, and an absent left sural sensory response. (R. 471.) However, she had full power in both the upper and lower extremities. (R. 471.) Dr. Joseph found evidence of motor sensory polyneuropathy, mainly sensory, likely related to chemotherapy. (R. 471.)

In October, 2006, Dr. Headley stated that Goode was "doing well with regard to breast cancer but unfortunately is limited in terms of activity and ability to work due to persistent neuropathy involving her feet." (R. 416.) She did not report any hand symptoms, and Dr. Headley was encouraged that her condition was improving. (R. 416.) She began physical therapy, and in November, 2006, Dr. Headley noted some gradual improvement. (R. 413.) Goode reported pain in the soles of her feet but little discomfort in her hands. (R. 413.) By January, 2007, Goode said her foot pain had not improved, but she had no significant weakness in her extremities. (R. 477.) Dr. Headley filled out an Ongoing Physician's Statement of Disability for Goode's long term disability provider on February 12, 2007. (R. 505.) He indicated that Goode suffered from peripheral neuropathy, breast cancer, and extremity pain, and pointed to her EMG nerve conduction studies as objective evidence to support her inability to work. (R. 505.) He noted that her condition had improved, and that he expected her to be released to full time light work on July 1, 2007. (R. 506.) At the time, however, he did not release her to work.

In April, 2007, Dr. Headley remarked that Goode appeared to be a little more active than she was six months ago but that her feet continued to bother her. (R. 474.) She received therapy for mild lymphedema,[2] which caused her pain and decreased strength in her upper extremities. (R. 541, 545, 547-51.) Prior to her anticipated release to work in July, Dr. Headley determined that Goode was not, in fact, able to work. Dr. Headley filled out another Ongoing Physician's Statement of Disability form on June 12, 2007, noting she had extreme pain in her extremities (R. 553), and stating severe limitations of functional capacity preclude her from even sedentary work. (R. 554.) Dr. Headley gave the same opinion on another form in August, 2007, as a result

---

[2] Lymphedema is chronic unilateral or bilateral edema of the extremities due to accumulation of interstitial fluid as a result of stasis of lymph, which is secondary to obstruction of lymph vessels or disorders of the lymph nodes. Dorland's Illustrated Medical Dictionary 1076 (30th ed. 2003).

8

of her severe neuropathy. (R. 557.) While he checked a box indicating her condition had improved, he remarked that he was "uncertain if she will be able to work." (R. 557.) Goode continued to complain of pain in her knees, arm, feet and chest in August, 2007. (R. 563.) Dr. Headley wrote a letter dated February 20, 2008, stating he has been treating Goode for severe peripheral neuropathy, which has caused her difficulty standing for prolonged periods and doing work with her hands that requires frequent handling. He noted that she would have difficulty maintaining concentration for a full workday as a result of her medical condition. (R. 562.) This opinion is echoed by a letter written by Goode's primary care physician, Dr. Kim Wright, who stated on February 14, 2008 that Goode is unable to work due to complications from breast cancer. (R. 561.)

Dr. Headley's office notes from February, 2008 do not appear to have been before the ALJ but were sent to the Appeals Council and incorporated into the record. Goode reported on February 25, 2008 that she was experiencing more weakness in her hands. (R. 27.) She stated she dropped things and had difficulty with fine motor control. (R. 27.) Dr. Headley noted his concern "that her neurologic symptoms seem to be worse as compared to a year ago. She has decreased strength in her upper extremities." (R. 27.) He referred her back to Dr. Joseph for further nerve conduction studies. (R. 27.) Goode presented to Dr. Purvez at a pain center in October, 2008. (R. 31.) Examination revealed no sensory or motor deficits but areas of decreased sensation with some areas of allodynia.[3] (R. 31.)

B.

ALJ Kilbane failed to give Dr. Headley's opinions that Goode is disabled from all work controlling weight, claiming there are inconsistencies in his reports as regards her functional

---

[3] Allodynia is pain resulting from a non-noxious stimulus to normal skin. Dorland's Illustrated Medical Dictionary 51 (30th ed. 2003).

9

limitations. The ALJ points specifically to the disability form filled out by Dr. Headley on February 12, 2007. The ALJ claims it says that Goode "had slight limitation in her functional capacity, but was capable of performing light work." (R. 21.) But the ALJ mischaracterizes Dr. Headley's opinion. A close look at the February, 2007 disability form reveals that Dr. Headley had not – and did not – release Goode to work. Rather, Dr. Headley said he expected Goode to be released to full-time work in July. (R. 506.) Prior to July, however, Dr. Headley's opinion regarding her ability to work changed. In June, 2007, he stated she had severe limitations of functional capacity that precluded even sedentary work. He gave similar statements in August, 2007 and January, 2008. The fact that Dr. Headley at one point anticipated Goode's condition was improving such that she would be able to return to work in the future, but later determined she was unable to do so, does not mean his opinions are inconsistent. Viewing the February, 2007 disability statement as a whole, it is plain that Dr. Headley did not intend to suggest that Goode was capable of performing light work at the time. If she was capable of such work, he would have released her to work. But he did not. Indeed, Dr. Headley never released Goode to work – light duty or otherwise.

The ALJ isolates a box checked by Dr. Headley on this February, 2007 disability form, claiming it is evidence that Goode is capable of light work, an opinion he says is supported by both the reviewing and examining state agency physicians. Consultative examiner Dr. Young indeed said that Goode may perform light duty work for approximately six hours throughout the day. But what stands out about Dr. Young's assessment is the statement that follows: "however, due to the fact that the patient has a lot of pain most of the time, [it] is very doubtful." (R. 429.) Dr. Young, like Dr. Headley, seriously questioned Goode's ability to maintain employment given her level of pain. In this regard, the opinions of Drs. Headley and Young are echoed by

Goode's primary care physician, Dr. Kim Wright, who stated in a February 14, 2008 letter that Goode is totally disabled. (R. 561.)

The ALJ's rejection of the treating specialist's opinion that Goode cannot work falls short of what is required by case law and the Commissioner's own regulations. In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

Dr. Headley has been Goode's treating oncologist since 2005. According to Goode, he is her "main doctor." (R. 47-48.) Based on his examination of Goode and her complaints of pain, Dr. Headley opined numerous times that she cannot work. These opinions are shared by Drs. Young and Wright.[4] While Dr. Headley's records themselves do not contain much in the way of objective findings, he referred Goode for nerve conduction studies which provide objective evidence of motor sensory polyneuropathy, upon which Dr. Headley relied in making his disability determinations. Goode's complaints of pain are well documented in Dr. Headley's

---

[4] It is also worth noting that Dr. Guglielmetti, Goode's breast cancer surgeon, opined that Goode was disabled during her chemotherapy and radiation treatment from November, 2005 through mid-2006. (R. 248.) In his decision, the ALJ incorrectly refers to Dr. Guglielmetti as Goode's primary care physician and discounted his opinion as to Goode's disability, claiming "[t]hese are vague disability statements based on two brief examinations, one of which indicated she was doing quite well and the other documented a temporary reaction to treatment." (R. 20.)

treatment records and in the administrative record. These complaints are consistent with the statements she made at the administrative hearing as to her functional limitations. Goode cannot drive because she has trouble feeling the pedals due to the burning and numbness in her feet. (R. 39, 317-18.) She does not shop for groceries. (R. 46.) She is unable to vacuum, dust or do laundry. (R. 47.) She cannot do her own hair. (R. 46.) She cannot take her children to activities or help them with her homework. (R. 52.) She relies on her family for support in all of these daily activities. Goode has difficulty holding a toothbrush, opening lids and turning doorknobs. (R. 42-46.) Although no assistive device has been prescribed by a physician, Goode testified that she uses a cane to walk per the recommendation of her therapist, who said it will help to keep her on balance. (R. 44.) Goode's mother testified at the administrative hearing that she has seen a big change in her daughter since her cancer diagnosis, and that Goode is "in pain most of the time" and spends periods of time in her room crying. (R. 51.)

This case lacks the persuasive contrary evidence needed to justify the ALJ's rejection of Dr. Headley's disability opinion. Dr. Headley is Goode's longstanding treating oncologist. His opinion that Goode is disabled from all work is shared by another treating physician, Dr. Wright, and, to an extent, by the state agency consultative examiner, Dr. Young. Taking the record as a whole, including these assessments and Goode's persistent complaints of pain, the undersigned cannot say the ALJ's opinion is supported by substantial evidence. As such, it is **RECOMMENDED** that this case be **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

## IV

At the summary judgment hearing, Goode raised an additional argument in favor of remand pursuant to sentence six of 42 U.S.C. § 405(g), based on the fully favorable decision she

received on her subsequent disability application. This decision, issued by ALJ Malick on June 22, 2010, found Goode disabled as of March 29, 2008, the day after ALJ Kilbane's decision in this case.

Pursuant to sentence six of 42 U.S.C. § 405(g), a reviewing court may remand a case to the Commissioner upon a showing that there is new evidence, which is material, and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Evidence is new if it is relevant to the determination of disability at the time the application was first filed and not merely cumulative. Borders, 777 F.2d at 955; see also Wilkins, 953 F.2d at 96 ("Evidence is new within the meaning of this section if it is not duplicative or cumulative."). It is material if there is a reasonable possibility that the new evidence would have changed the outcome. Borders, 777 F.2d at 955; Wilkins, 953 F.2d at 96. There must be a good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner, and the claimant must present to the remanding court at least a general showing of the nature of the new evidence. 42 U.S.C. § 405(g); Borders, 777 F.2d at 955.

Goode argues that the subsequent award of disability benefits itself constitutes new and material evidence warranting a sentence six remand. The Commissioner, on the other hand, contends that a subsequent decision cannot itself be considered new evidence within the meaning of sentence six. The Commissioner relies on a decision out of the Sixth Circuit, in which the court held "[a] subsequent favorable decision may be supported by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence." Allen v. Commissioner, 561 F.3d 646, 653 (6th Cir. 2009).

But at least one court in this district has taken a different approach. In <u>Hayes v. Astrue</u>, the court held that "where a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence." 488 F. Supp. 2d 560, 565 (W.D. Va. 2007) (Jones, J.); <u>accord</u> <u>Reichard v. Barnhart</u>, 285 F. Supp. 2d 728, 734 (S.D.W.Va. 2003) (finding the ALJ's decision granting disability benefits less than a week after he first pronounced claimant was not disabled is new and material evidence). While the <u>Hayes</u> court held that the grant of benefits in a subsequent application is not preclusive evidence as to a prior application, it may be new and material evidence warranting a remand. 488 F. Supp. 2d at 565 (citing <u>Bruton v. Massanari</u>, 268 F.3d 824, 827 (9th Cir. 2001)); <u>see also</u> <u>Wilkins v. Sec'y Dept. Health & Human Servs.</u>, 953 F.2d 93 (4th Cir. 1991).

The undersigned declines to follow the <u>Allen</u> opinion, which is not binding precedent on this court, and instead follows the court's reasoning in <u>Hayes</u>. ALJ Malick's subsequent disability decision itself can constitute new and material evidence warranting remand. And in this case, it does.

The court has before it the supplemental administrative record on which ALJ Malick based his decision. In finding Goode disabled, ALJ Malick expressly relied on the opinions of three examining doctors. First, ALJ Malick gave significant weight to Dr. Headley's August, 2007 treatment records and February 20, 2008 disability opinion. These records were before ALJ Kilbane in the instant case. In his February, 2008 letter, Dr. Headley stated that Goode has difficulty standing for prolonged periods and doing work requiring frequent handling due to her peripheral neuropathy. (R. 562.) Dr. Headley also opined that Goode would have difficulty maintaining appropriate concentration for an eight hour workday. (R. 562.) Second, ALJ

14

Malick relied on the disability opinion of Goode's treating physician, Dr. Kim Wright. This, too, was part of the record before ALJ Kilbane. Dr. Wright opined on February 14, 2008 that Goode is totally disabled from all work due to complications arising out of her breast cancer. (R. 561.)

The third opinion on which ALJ Malick relied, that of consultative psychological examiner E. Wayne Sloop, Ph.D., was not before ALJ Kilbane. Dr. Sloop evaluated Goode on April 5, 2010 and found her abilities to maintain regular attendance at work and to perform work activities consistently were impaired as a result of her mental and physical condition. Dr. Sloop noted that Goode's degree of slowed thinking and problems with attention and concentration prevent her from performing even simple and repetitive tasks for an extended period of time. (Def.'s Suppl. Br., Ex. 1 at 8.)

ALJ Malick concurred with the opinions of Drs. Headley, Sloop and Wright. He gave the state agency physicians' opinions little weight, noting: "The State agency medical consultants' physical assessments and psychological consultants' mental assessments are given little weight because other medical opinions are more consistent with the record as a whole and evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultants." (Exhibits to Pl.'s Suppl. Br.)

Having reviewed ALJ Malick's decision and the supplemental administrative record, the undersigned finds that the subsequent award of disability constitutes new and material evidence warranting remand. Two of the three disability assessments on which ALJ Malick based his decision were before ALJ Kilbane. The third, a consultative psychological evaluation from Dr. Sloop, references Goode's inability to maintain attention and concentration – a concern also noted by Dr. Headley in his February 20, 2008 letter. The supplemental administrative record documents Goode's continued complaints of pain in her extremities. Further EMG nerve

conduction studies performed after ALJ Kilbane's decision indicate that the cause of Goode's pain is not neuropathy, as once believed. But while the documented source of the pain changed, Goode's complaints of pain and resulting limitations did not. ALJ Malick found her statements regarding pain and functional limitations to be credible, and he relied on them, in addition to the opinions of Drs. Headley, Sloop and Wright, in determining that Goode is limited to performing less than a full range of sedentary work.

ALJ Malick awarded Goode benefits beginning March 29, 2008, the day after ALJ Kilbane's unfavorable decision in this case. Given his reliance on the opinions of Drs. Headley and Wright, both of which were before ALJ Kilbane, there is a reasonable probability that the new evidence would have changed the outcome of the instant case. Borders, 777 F.2d at 955; Wilkins, 953 F.2d at 96. The Commissioner's subsequent decision is highly relevant to the determination of disability in this case. As the court held in Reichard:

> [T]here is a reasonable possibility that the evidence considered by ALJ Conover in reaching his second decision might well have changed the outcome in this case as it was before him the first time. It is not in any way evident from the current record in this case how Claimant became disabled less than a week after ALJ Conover's first decision.

285 F. Supp. 2d at 734. Accordingly, the undersigned **RECOMMENDS** that this matter be **REMANDED** to the Commissioner for reconsideration of the disability onset date.

V

It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. In this case, substantial evidence does not support the Commissioner's decision, as the ALJ did not give proper weight to the opinion of Goode's treating physician, Dr. Headley. Additionally, there is a potential inconsistency between ALJ Kilbane's denial of

16

disability benefits and the subsequent award of benefits by ALJ Malick based on the same alleged physical limitations and two of the same physicians' assessments only one day after ALJ Kilbane's unfavorable decision. Accordingly, it is **RECOMMENDED** that this case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), that plaintiff's motion for summary judgment (Docket #13) be **GRANTED**, and that the Commissioner's motion for summary judgment (Docket #14) and supplemental motion for summary judgment (Docket #22) be **DENIED**.

The Clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Entered: February 25, 2011.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge